# IN THE 15TH JUDICIAL CIRCUIT COURT, LAFAYETTE COUNTY, MISSOURI



| Judge or Division: DENNIS ALLEN ROLF | Case Number: 08LF-CV01605 |
|---|---|
| Plaintiff/Petitioner: JAMES STEFFENS, BH & W, INC AND CATRON FAMILY, LP | Plaintiff's/Petitioner's Attorney/Address JAMES H WORTHINGTON ATTORNEY AT LAW P O BOX 280 NINE SOUTH ELEVENTH ST LEXINGTON, MO 64067 |
| vs. | |
| Defendant/Respondent: UNION PACIFIC RAILROAD CO/ST LOUIS | Court Address: LAFAYETTE HALL 116 S TENTH ST P O BOX 10 LEXINGTON, MO 64067 |
| Nature of Suit: CC Breach of Contract | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: UNION PACIFIC RAILROAD CO
Alias: SERVE: REGISTERED AGENT: THE CORPORATION COMPANY
120 S CENTRAL AVE
CLAYTON, MO 63105

23 CTCOR B

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

11-18-08
Date

_Patty Duwele_
Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____ Printed Name of Sheriff or Server     _____ Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).
(Seal)
My commission expires: _____
Date     Notary Public

Sheriff's Fees
Summons $_____
Non Est $_____
Sheriff's Deputy Salary
Supplemental Surcharge $ 10.00
Mileage $_____ ( _____ miles @ $_____ per mile)
Total $_____

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (SMCC) For Court Use Only: Document Id # 08-SMCC-667     1 of 1     Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:08-cv-00966-GAF   Document 1-1   Filed 12/17/08   Page 1 of 18



# IN THE 15TH JUDICIAL CIRCUIT COURT, LAFAYETTE COUNTY, MISSOURI

| Judge or Division:<br>DENNIS ALLEN ROLF | Case Number: 08LF-CV01605 |
|---|---|
| Plaintiff/Petitioner:<br>JAMES STEFFENS, BH & W, INC AND CATRON FAMILY, LP<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>JAMES H WORTHINGTON<br>ATTORNEY AT LAW<br>P O BOX 280<br>NINE SOUTH ELEVENTH ST<br>LEXINGTON, MO 64067 |
| Defendant/Respondent:<br>UNION PACIFIC RAILROAD CO/ST LOUIS | Court Address:<br>LAFAYETTE HALL<br>116 S TENTH ST<br>P O BOX 10<br>LEXINGTON, MO 64067 |
| Nature of Suit:<br>CC Breach of Contract | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: UNION PACIFIC RAILROAD CO
Alias: SERVE: REGISTERED AGENT: THE CORPORATION COMPANY

120 S CENTRAL AVE
CLAYTON, MO 63105

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

___11-18-08___ ___Patty Dunkle___
Date                    Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server    Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).

(Seal)     My commission expires: _____     _____
                                    Date              Notary Public

| Sheriff's Fees | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (SMCC) For Court Use Only: Document Id # 08-SMCC-667      1 of 1      Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:08-cv-00966-GAF   Document 1-1   Filed 12/17/08   Page 2 of 18



JAMES STEFFENS
16797 Linwood Lawn Road
Lexington, Missouri 64067

BH & W, INC.
16469 Dwarf Lake Road
Lexington, Missouri 64067

and

CATRON FAMILY, L.P.
1225 W 56th Street
Kansas City, Missouri 64113

        Plaintiffs,

vs.   Case No.: 081F-CV01605

UNION PACIFIC RAILROAD COMPANY

        Defendant.

Serve Registered Agent:    The Corporation Company
                              120 South Central Avenue
                              Clayton, Missouri 63105

### PETITION FOR DAMAGES

COMES NOW, Plaintiffs, JAMES STEFFENS, BH & W, INC., and CATRON FAMILY, L.P., by and through their attorney of record, James H. Worthington and the Law Firm of Aull, Sherman, Worthington, Giorza and Hamilton, L.L.C., and for their Petition for Damages, state as follows:

1. That Plaintiff, BH & W, Inc., is a Missouri Corporation doing business in the State of Missouri.

2. That Plaintiff, BH & W, Inc., is the owner of property located in Lafayette County, Missouri, legally described as follows:

T.51N.-R26W. All of sec. 19, 20 and the North Quarter of sec. 29, 30.

3. That Plaintiff, CATRON FAMILY, L.P., is a Limited Partnership doing business in the State of Missouri.

4. That Plaintiff, CATRON FAMILY, L.P., is the owner of property located in Lafayette County, Missouri, legally described as follows:

> The West Half of the Northwest Quarter of Section 8, except 3.45 acres out of the Northwest corner by a line commencing 11 chains and 93 links South of the Northwest corner of said West Half of said Northwest Quarter, and running Northeasterly so as to intersect the North line of said West Half of the Northwest Quarter, 5 chains and 81 links East of said Northwest corner of said West Half of the Northwest Quarter; also all that part of the South Half of the West Half of the Southwest Quarter of Section 5 East of a line commencing a at point in the North line of said South Half of the West Half of the Southwest Quarter, 8 chains 33 links West of the Northeast corner, thence South 14 chains and 20 links, thence West 3 chains and 8 links, thence South 16 degrees West to the South line of the South Half of the West Half of the Southwest Quarter at a point 5 chains and 81 links East of the Southwest Corner of said tract; also, the Northeast Quarter, of the Southwest Quarter of Section 5. and the North Half of the Northeast Quarter of the Northwest Quarter of Section 8, all being in Township 50, Range 26, Lafayette County, Missouri.

5. That Plaintiff, JAMES STEFFENS, is an individual of the State of Missouri, doing business and residing in Lafayette County, Missouri.

6. That Plaintiff, JAMES STEFFENS, and Plaintiff, BH & W, INC., have entered into a Farm Lease Agreement, which may also be referred to as a Share Crop Agreement. A copy of said agreement is attached hereto as Exhibit "A".

7. That Plaintiff, JAMES STEFFENS, and Plaintiff, CATRON FAMILY, L.P., have entered into a Farm Lease and Security Agreement, which also may be referred to as a Share Crop Agreement. A copy of said agreement is attached hereto as Exhibit "B".

8. That the Defendant, UNION PACIFIC RAILROAD, CO., is a Delaware Company, doing business in the State of Missouri.

9. That Lafayette County, Missouri is a proper venue for this cause of action.

10. That Defendant owns railroad tract that runs on the North side of the above described real property and the Missouri River runs on the North side of said railroad tracks.

11. That drainage tubes run underneath of the aforementioned railroad tracks to allow water to naturally drain from the property into the Missouri River.

12. That prior to May 6, 2007, the Missouri River broke through a levy causing the river to flood the above described property, damaging the Defendant's railroad tracks.

13. That for the Defendant to fix the damage to the railroad, the Defendant brought in box cars full of rock, and had the drainage tubing filled with rocks to prevent the drainage tubes from collapsing when the heavy box cars drove over the top of that part of the railroad.

14. That once the railroad was fixed, Defendant failed and/or refused to timely remove the rocks from the drainage tubing.

15. That the rocks prevented the natural flow of water from draining off of the Plaintiff's property.

16. That the Defendant's were notified by Plaintiff's and/or representatives of the Plaintiffs, and Todd Hogg of the Missouri Department of Transportation, to remove the rocks but Defendant's failed and/or refused to remove the rocks in a timely manner.

17. That due to Defendant's failure and/or refusal to remove the rocks from the drainage tubbing, the water could not properly drain which prevented the Plaintiff's from planting their crops on the above described property, causing a total loss of One Hundred Sixteen Thousand Three Hundred Seven Dollars and 82/100 ($116, 307.82) for the year 2007. A copy of the crop estimates for the 2007 year are attached hereto as Plaintiff's Exhibit "C" and incorporated herein by this reference.

18. That as direct and proximate result of the Defendant's negligence, the Plaintiff's have been damaged.

19. That Plaintiff's are requesting that this Court enter a Judgment in favor of Plaintiff's and against Defendant's in the amount of One Hundred Sixteen Thousand Three Hundred Seven Dollars and 82/100 ($116,307.82) as and for their crop loss sustained.

20. That the Plaintiff's would not have been damaged if the Defendant's had removed the rocks from the drainage tubbing.

WHEREFORE, Plaintiff's pray for a Judgment against Defendant's in the amount of One Hundred Sixteen Thousand Three Hundred Seven Dollars and 82/100 ($116,307.82) as and for damages they sustained from not being able to plant their crops; that costs be assessed against Defendant; and for such other and further relief as this Court deems meet and just in the premises.

Respectfully Submitted,

*[signature]*

JAMES H. WORTHINGTON    Missouri Bar #51829
AULL, SHERMAN, WORTHINGTON, GIORZA
& HAMILTON, L.L.C.
9 S. 11th Street; P.O. Box 280
Lexington, Missouri 64067-0280
Phone: (660) 259-2277
Fax: (660) 259-4445
ATTORNEY FOR PLAINTIFFS

STATE OF MISSOURI    )
                     ) ss.
COUNTY OF Lafayette  )

I, JAMES STEFFENS, being above the lawful age and duly sworn on my oath state that I have read the above and foregoing Petition and that the facts and information contained therein are true and accurate according to my best knowledge, information and belief.

_____
JAMES STEFFENS

Subscribed and sworn to before me, a Notary Public, on this 7th day of Nov., 2008.

_____
Notary Public

My Commission Expires:

CLAUDIA F. ADKINS
Notary Public - Notary Seal
STATE OF MISSOURI
Lafayette County
My Commission Expires: Nov. 5, 2010
Commission # 06392783

STATE OF MISSOURI     )
                      ) ss.
COUNTY OF Lafayette   )

I, BONNIE L. HOEPPNER, on behalf of BH & W, INC. being above the lawful age and duly sworn on my oath state that I have read the above and foregoing Petition and that the facts and information contained therein are true and accurate according to my best knowledge, information and belief.

_____
BONNIE L. HOEPPNER

Subscribed and sworn to before me, a Notary Public, on this 14th day of Nov., 2008.

_____
Notary Public

My Commission Expires:

CLAUDIA F. ADKINS
Notary Public - Notary Seal
STATE OF MISSOURI
Lafayette County
My Commission Expires: Nov. 5, 2010
Commission # 06392783

STATE OF ~~MISSOURI~~ <u>Kansas</u>                )
                                                                            ) ss.
COUNTY OF <u>Johnson</u>                          )

    I, ROSE M. CALLAHAN, on behalf of CATRON FAMILY, L.P., being above the lawful age and duly sworn on my oath state that I have read the above and foregoing Petition and that the facts and information contained therein are true and accurate according to my best knowledge, information and belief.

*Rose M. Callahan*
ROSE M. CALLAHAN

Subscribed and sworn to before me, a Notary Public, on this <u>14th</u> day of <u>Nov</u>, 2008.

*Kim Nelson*
Notary Public

My Commission Expires:
<u>3-28-2011</u>

[Notary Seal: KIM NELSON, STATE OF KANSAS, My Appt. Exp. 3-28-2011]

Exhibit "A"

Farm Lease Agreement

This Farm Lease Agreement is made and entered into on this the 26 day of Dec 2000, by and between:

B H + W Inc _____ Lessor

James Steffens
16797 Linwood Lawn rd.
Lexington, Mo 64067          Lessee

In Consideration of the mutual promises made herein the parties hereto make the following agreement:

1. Term -- Lessor agrees to rent to Lessee, upon terms described herein, certain farm real estate located in Lafayette County, Missiouri for a term commencing on March 1, 2001, and ending of February 28, 2002. This lease will continue in effect from year to year thereafter unless written notice of termination is given by either party to the other party at least six months prior to the expiration of this lease or March 1st of any year thereafter.

2. Property Description -- The real property subject to this consists of 700 acres more less and is titled solely in the name of B H + W Inc _____, Lessor. The property is described as follows:
T.51N.-R26W. All of sec. 19, 20 and the North Quarter of sec. 29, 30.

3. Rent-- All crops will be divided as follows: 1/2 to B H + W Inc (Lessor) and 1/2 to James Steffens (Lessee). When lessees (or their employees or agents) harvest the crops, the harvested crop shall be delivered to the Lexington MFA at no cost to Lessor. If grain is hauled to any other granary ( first agreed upon by both parties) the Lessor and the Lessee shall share equal in the cost.

3a. All Government payments-- Shall be shared equally between Lessor and Lessee

4. Crop Inputs-- All crop expenses ( seed, fert. chem., etc.) shall be shared equally between Lessee and Lessor.

5. Chemical, Fert. Application and Harvesting-- Shall be shared at equal costs to Lessor and Lessee. In the event any such work be performed by Lessee, the Lessor will pay to Lessee an amount equal to one-half of what would have been the cost of such work had it been performed by a custom operator at the prevailing rate for said locality.

6. Farm Equipment-- All farming equipment necessary and appropriate to farm the above described property properly under and pursuant to the terms of this lease shall be provided be Lessee.

7. Levees Maintenance . Lessee will mow levees and spray field boundaries. The Lessor will furnish 100% of the chemicals cost for said spraying. Repair of Leeves , tubes, flood gates, removal of flood water and land improvement shall be 100% to Lessor expense.

8. Farm Grain Storage-- Lessee is permitted to use grain bins and blower owned by Lessor for storing jointly owned grain. Lessor will pay 1/2 of fuel and electric cost if necessary. Should bins or blowers require repair, Lessee shall contact Lessor before contracting repairs.

9. Lessee agrees to cash rent pasture and hay ground for agreed price.

10. Hunting and Fishing Rights-- It is understood of the parties that Lessor has sole power to grants others the rights to hunt on the property. Any rights obtained under this lease agreement do not vest in the Lessee the right to hunt or fish or allow others to on this property. Lessee agree to assist the Lessor in prohibiting persons without permission from entering onto the land for any other purpose. This also releases the Lessee of any liability of said Hunting and Fishing Rights.

In Witness Wereof, the parties to this agreement have caused it to be executed in Lafayette County, Missouri on the date indicated above.

_____
BH&W Inc. Lessor

_____
James Steffens Lessee

*Exhibit "B"*

# FARM LEASE AND SECURITY AGREEMENT

**Parties:**
This Farm Lease and Security Agreement ("Lease") is made and entered into this 30TH day of JANUARY, 2007 by and between LANDLORD CATRON FAMILY LIMITED PARTNERSHIP, 1226 W. 56th Street, Kansas City, MO. 64113 and OPERATOR JAMES STEFFENS, 16797 Linwood Lawn, Lexington, MO. 64067.

**Property:**
The LANDLORD leases to the OPERATOR the following described property located in LAFAYETTE County, State of MISSOURI, containing approximately 879 acres:

   DETAILED LEGAL DESCRIPTION ATTACHED

**Term:**
The term of this Lease shall begin on MARCH 1, 2007 and end on FEBRUARY 28, 2008 without notice of any type being required of the LANDLORD.

**Rent:**
The OPERATOR shall pay rent to the LANDLORD as follows:
   1/3 SHARE OF ALL CROPS
   $ 1500 CASH RENT FOR PASTURE
   $ 1500 RENT FOR OPEN MACHINE SHED, PAYABLE IN ADVANCE ON MARCH 1ST
   $ 600 RENT FOR ENCLOSED BARN, PAYABLE IN ADVANCE ON MARCH 1ST
   $ .02/BU/MO FOR GRAIN BIN STORAGE; LANDLORD WILL PAY 1/3 DRYING COST FOR ANY JOINTLY STORED GRAIN; OPERATOR WILL PROVIDE LABOR AND HANDLING COSTS.

**Expenses:**
Except as otherwise specified herein the expenses incident to the operation of the property during the term of this lease shall be paid as follows:
   THE OPERATOR WILL FURNISH ALL SEED, FERTILIZER, CHEMICALS, LABOR AND ALL OTHER EXPENSES INCIDENT TO THE GROWING OF THE CROPS. LANDLORD SHALL PAY FOR 1/3 OF ANY LIME NEEDED AND THE OPERATOR SHALL PAY 2/3. SHOULD THE PARTIES NOT REENTER A LEASE FOR THIS LAND IN SUBSEQUENT YEARS, LANDLORD SHALL REMIT TO TENANT HIS LIME COST AS FOLLOWS: 3/4 AFTER ONE YEAR, 1/2 AFTER TWO YEARS, AND 1/4 AFTER 3 YEARS.

   OPERATOR RESPONSIBILITY FOR HAULING COSTS SHALL BE LIMITED TO 20 MILES.

**Farm Programs:**
With respect to participation of this farm in Government Agricultural Programs, the division of payments shall be as follows:
   THE GOVERNMENT PROGRAM PAYMENTS ARE TO BE SHARED AS THE CROPS ARE SHARED.

**Agricultural Chemicals:**
The OPERATOR agrees that not less than the following amounts of fertilizer, agricultural lime, and other specified chemicals will be applied.
   AMOUNTS TO BE APPLIED ARE TO BE AGREED ON BETWEEN THE OPERATOR AND THE LANDLORD.

**Operating Covenants:**
The parties hereto agree to be bound by Operating Covenants 1 through 39 herein, except the following:

_____, _____, _____, _____, _____.

ADDENDUM ATTACHED:                              INITIALS: _____
YES __X__ NO _____
*Legal Description*

## OPERATING COVENANTS

1. **Rent:** Cash rent shall be paid and crop rent shall be delivered on the dates and at the locations set forth herein, without further notice from the LANDLORD to the OPERATOR. Rent not paid or delivered when due shall bear interest until paid or delivered at the rate of 18% per annum, or the highest rate allowed by the laws of the state where the property is located, whichever is less.

2. **Assignment - Subleasing:** OPERATOR agrees not to assign this lease to any other person, nor sublease all or any part of the property described herein without the written permission of LANDLORD. For the purpose of this section, an assignment of this lease shall be deemed to have taken place when all, or substantially all of the agricultural operations are performed by hired labor or by one or more third parties hired by the OPERATOR to perform agricultural operations on a custom basis.

3. **Right to Enter:** The LANDLORD, its agents or assigns, shall have the right to go upon the premises at any time to inspect the same or to make repairs or improvements thereon, or for any other purpose incidental to the management of the property. The LANDLORD shall also have the right to go upon the land to fall plow or develop the land for irrigation after the crop has been harvested, and, at the option of the LANDLORD, to seed or sow any grain or grass seeds thereon.

4. **Litigation:** In the event of default by the OPERATOR resulting in the LANDLORD employing an attorney for the purpose of enforcing any provision of this Lease or regaining possession of the property, the OPERATOR agrees to pay the LANDLORD's reasonable attorney's fees and expenses on demand. Delinquent payments shall draw interest at the default rate referred to in Paragraph 6.

5. **Default:** All covenants and agreements contained in this Lease are declared to be conditions of the lease for the term demised to the OPERATOR. Should the OPERATOR default in the performance of any covenant, condition or agreement contained herein, the LANDLORD may terminate the lease as provided herein.

6. **Failure to Perform - Right of Entry:** The OPERATOR agrees that if he or she fails to plant, fertilize, cultivate, irrigate, or harvest the crops, or to cut or spray weeds, or do any other act required hereunder for the proper operation and management of the premises at the proper time and in the proper manner, or if he or she assigns this lease or subleases the premises in whole or in part, the LANDLORD may, after giving the OPERATOR five (5) days written notice, sent to the OPERATOR's last known address by U.S. Mail, postage pre-paid, either (a) declare this lease to be terminated and take immediate possession of the premises, or, (b) enter upon the premises in person or by agent or employee and do the necessary planting, fertilizing, cultivating, irrigating, or harvesting of the crops, cutting or spraying of weeds, or such other matters which the OPERATOR should have done, and the LANDLORD shall add all expenses incurred therewith to the rent to be paid hereunder, the same to be immediately due and bear interest until paid at the rate of 18% per annum, or the highest rate allowed by the laws of the state where the property is located, whichever is less.

7. **Financial Statement:** The OPERATOR agrees to furnish the LANDLORD a current financial statement showing the OPERATOR's current financial position annually, upon request.

8. **Insolvency of OPERATOR:** The insolvency of the OPERATOR, a receiver being appointed to take possession of all or substantially all of the property of the OPERATOR, the making of a general assignment for the benefit of creditors by the OPERATOR, or the filing by or against the OPERATOR under provisions of the Federal Bankruptcy Code (or any successor law or any state insolvency laws), shall terminate this lease and entitle the LANDLORD to re-enter and regain possession of the premises.

9. **Sale and Removal of Grain or Livestock:** The OPERATOR acknowledges that the LANDLORD has property rights in the grain or livestock produced on the property, and therefore covenants and agrees not to sell or remove any of the grain or livestock raised on the premises during the term of this lease until the rent due hereunder is fully paid or the LANDLORD has given written consent to such sale or removal.

10. **Security Interest:** The OPERATOR hereby grants to the LANDLORD a security interest in all of the crops and livestock growing or to be grown, or raised, on the previously described property, and on all harvested crops and raised livestock now owned or hereafter acquired, wherever stored, grown, produced, or raised on the property described herein and on all proceeds thereof. The security interest granted herein shall extend to and cover all warehouse receipts issued by any warehouse as evidence of the delivery and storage of crops, and to receipts from the sale of livestock. It shall also extend to general intangibles, accounts, and rents, issues and profits, and farm program entitlements of any type. OPERATOR agrees to execute all legal documents in connection herewith.

11. **Warranty of OPERATOR:** The OPERATOR hereby expressly warrants to the LANDLORD that the security interest granted to the LANDLORD is a first security interest, prior and paramount to any and all other security interests pertaining to the property covered thereby.

12. **OPERATOR's Contribution:** The OPERATOR agrees (a) to follow the agricultural practices that are generally recommended for and that are best adapted to this type of property and this locality, unless other practices are agreed upon by both parties, and (b) to furnish all labor necessary to operate this property.

13. **Care of Property:** The OPERATOR agrees that he will a) cultivate and otherwise operate the property in a workmanlike manner and in accordance with generally recognized and approved agricultural practices, b) when so directed, farm on the contour, or use minimum tillage or no tillage agricultural practices, c) operate the property in conformity with appropriate soil and water conservation practices, and in such a way as to maintain and if possible enhance soil productivity, and d) operate the property in conformity with all applicable conservation plans or programs, including but not limited to those subject to the jurisdiction of USDA and its related agencies.

14. **Environmental Compliance:** The OPERATOR represents that he is familiar with the Federal, State and local environmental laws and regulations applicable to the operation of this property. The OPERATOR agrees to operate the property in conformity with said environmental provisions. The OPERATOR agrees to notify the LANDLORD of the existence of any known conditions on the property that are, or might reasonably be deemed to be in violation of said environmental provisions. Further, the OPERATOR agrees to completely and conscientiously complete and return any and all environmental questionnaires or other requests for environmental information submitted by the LANDLORD.

15. **Machinery and Equipment:** The OPERATOR shall be responsible for providing the machinery and equipment necessary for planting, cultivating and harvesting the crops, and for any other agricultural operations incidental to operating the property covered by this Lease. All costs of purchasing, renting, leasing, and operating the machinery and equipment, including the cost of custom operations, shall be paid by the OPERATOR, except as otherwise specified herein.

16. **Weed Control:** The OPERATOR agrees to keep the cultivated areas clean and free from weeds and further agrees to cut or spray weeds, trees and shrubs growing in the fence rows and non-crop areas, as is necessary to keep these areas neat and presentable. All costs involved in controlling weeds shall be paid by the OPERATOR except as otherwise specified herein. The OPERATOR agrees to mow the roadsides twice a year.

17. **Insect Control:** The OPERATOR agrees to carry out all approved practices for the control and eradication of corn borer, rootworm, and other crop pests, as may be necessary, at his own cost, unless otherwise specified herein.

18. **Fertilizers, Lime and Manure:** The OPERATOR agrees to haul out and distribute, as agreed with the LANDLORD, all the manure and compost suitable to be used, and to apply at the proper time and in the proper manner all fertilizers and agricultural lime. Further, the

Rev. 12-89

Page 2 of 4 pages

Case 4:08-cv-00966-GAF    Document 1-1    Filed 12/17/08    Page 13 of 18

OPERATOR will, upon request, provide the LANDLORD with receipts, sale tickets, or other documentation showing application of the agricultural chemicals. The OPERATOR shall be responsible for all costs of purchasing and applying manure, fertilizers, and agricultural lime, except as otherwise agreed herein.

19. **Grain Handling:** The OPERATOR shall be responsible for the costs of shelling of ear corn, hauling and scooping of grain raised on the premises, unless otherwise agreed herein.

20. **Straw and Stalks:** The OPERATOR agrees not to burn any stacks, straw, stalks, or stubble, or to remove any straw or stalks from the premises, or pasture the same without the written permission of the LANDLORD.

21. **Improvements:** The OPERATOR agrees to perform ordinary maintenance tasks and will otherwise properly maintain all buildings, tile lines, fences, irrigation equipment, water systems and other improvements on the premises, and shall yield them up to the LANDLORD at the end of the lease term in as good order and condition as at the beginning thereof, normal wear and tear excepted. The OPERATOR further agrees to provide labor and to haul such materials as may be necessary for said maintenance, and to provide the labor and materials necessary to make minor repairs to said improvements that are or may be due as a result of ordinary wear and tear. The OPERATOR shall be solely responsible for the cost of making repairs to improvements which have been damaged or destroyed because of the OPERATOR's failure to maintain, or otherwise because of OPERATOR's neglect, abuse, negligence, or lack of attention.

It is mutually understood and agreed that the LANDLORD shall not be obligated to replace any improvements lost or destroyed, regardless of whether or not such loss was covered by insurance.

22. **Fences:** The OPERATOR will remove fences at the request of the LANDLORD and will, upon request, maintain or build one rod of new fence per acre of land contained in this Lease, without charge for labor. In the event additional new fence is required, compensation shall be as provided for elsewhere herein.

23. **Improvements Made by OPERATOR:** It is mutually understood and agreed between the parties hereto that all buildings, fences and improvements of every kind and nature that may be erected upon the above described property during the term of this lease by the OPERATOR shall be deemed as rent and shall inure to the premises and become the property of the LANDLORD unless permission to erect and remove the same shall be obtained beforehand in writing, and made a part of this lease.

24. **Insurance:** The OPERATOR shall carry the following types and minimum coverages of insurance: (a) Worker's Compensation Insurance in compliance with the laws of the state where the property is located; Employer's Liability Insurance with a limit of not less than $100,000 and, where applicable, insurance in compliance with any other statutory obligations pertaining to the compensation of injured employees. (b) Comprehensive General Liability Insurance with respect to the OPERATOR's use and occupancy of the premises and all operations incidental thereto, with limits of not less than $300,000 for bodily injury liability each occurrence, and $100,000 for property damage liability each occurrence. LANDLORD and the property owner shall be named as an additional insured under the OPERATOR's Comprehensive General Liability Insurance. This insurance shall also provide contractual liability insurance covering the obligations assumed by the OPERATOR under that portion of this lease entitled Indemnity of LANDLORD. (c) Automobile Liability Insurance on all owned, non-owned, hired or leased automotive equipment in conjunction with operations, in amounts not less than $100,000/$300,000 for bodily injury liability and $25,000 for property damage liability.

As evidence to the above, the OPERATOR shall submit to the LANDLORD certificates of insurance. Such certificates shall stipulate that the insurance certified to will not be materially changed or cancelled by the insurer or any insured thereunder, without thirty (30) days advance written notice to the LANDLORD.

25. **Indemnity of LANDLORD:** The OPERATOR agrees to indemnify and hold the LANDLORD and the Property Owner harmless from any and all claims, liability, loss, damage or expenses resulting from OPERATOR's occupation and use of the premises, specifically including without limitation any claim, liability, loss or damage arising: (a) by reason of the injury to person or property from whatever cause (other than negligence or misconduct by the LANDLORD, or its employees or agents) while in, on or near the premises or in any way connected with the premises or with the improvements or personal property in or on the premises, including any liability for injury to the person or personal property of the OPERATOR, its agents or employees. (b) By reason of any work performed on the premises or materials furnished on the premises at the instance of or request of the OPERATOR, its agents or employees, other than negligence or misconduct by the LANDLORD, its agents or employees. (c) By reason of the OPERATOR's failure to perform any provision of this lease or to comply with any requirement imposed upon it or on the premises by any duly authorized governmental agency or political subdivision; provided that the OPERATOR shall not be responsible to comply with any requirements necessitating structural or permanent improvements or changes to the premises. (d) Because of the OPERATOR's failure or inability to pay as they become due any obligation incurred by it in the agricultural or other operations conducted by it on the premises.

26. **Independent Contractors:** If the OPERATOR employs independent contractors to perform any work on the property, or to conduct its farming operation, the OPERATOR shall supervise the work performed by such contractors and assure the LANDLORD that each contractor maintains in full force and effect, at contractor's sole cost and expense, the following kinds and amounts of insurance: (i) Worker's Compensation Insurance in compliance with the laws of the state where the property is located; Employer's Liability Insurance with a limit of not less than $100,000 and, where applicable, insurance in compliance with any other statutory obligations pertaining to the compensation of injured employees. (ii) General Liability Insurance with respect to contractor's performance of the work and all operations incidental thereto, with limits of not less than $500,000 for bodily injury liability each occurrence, and $500,000 for damage liability each occurrence. (iii) Automobile Liability Insurance on all owned, non-owned, hired or leased automotive equipment used in connection with contractor's operations in amounts not less than $100,000/ $300,000 for bodily injury liability and $25,000 for property damage liability. (iv) Any other insurance that the contractor desires or deems to be necessary for his own protection.

27. **Expiration of Term:** The OPERATOR covenants with the LANDLORD, at the expiration of the term of this lease, to yield up possession to the LANDLORD, without further demand or notice, in as good order and condition as when the same was entered upon by the OPERATOR, loss by fire or inevitable accidents or ordinary wear and tear excepted. If the OPERATOR fails to deliver up said premises, the OPERATOR agrees to pay the LANDLORD $100 per day for all time that he may continue in possession of the premises after the expiration of this lease.

28. **Binding on Heirs:** Except as provided in Paragraph 34, and except as may be mutually agreed by the parties, the provisions of this Lease shall be binding upon the heirs, executors, administrators, and successors of both the LANDLORD and the OPERATOR in like manner as upon the original parties. The rights referred to herein shall not include subleasing or assignment as set forth above.

29. **Partnership Not Created:** This lease should not be construed as giving rise to a partnership, and neither party shall be liable for debts or obligations of the other without written consent, and OPERATOR has no authority to incur any obligation on behalf of LANDLORD.

30. **Notices:** Except as otherwise expressly provided by law, any and all notices or communications required or permitted by this lease or by law to be served on or given to either party hereto by the other party shall be in writing and shall be deemed to be duly served and given when personally delivered, or deposited in the United States Mail, First Class postage, pre-paid, addressed to the party at the address of said party shown herein.

31. **Time of Essence:** Time is expressly declared to be of the essence of this Lease.

32. **Farm Programs:** Participation of this property in any offered program of the USDA for crop production control, soil conservation or range improvement, and the observance of the terms and conditions of same shall be at the option of the LANDLORD.

33. **Sale of Premises:** The OPERATOR agrees that this lease is made subject to the sale of all or any part of the real estate herein described by the Property Owner on or before January 1st of any year. In the event of sale of the premises prior to that date, the OPERATOR agrees to surrender his lease on such portion of the premises that has been sold and will deliver up possession of the same on or before the following March 1st.

34. **Death of OPERATOR:** The OPERATOR agrees that this lease is a personal contract with the LANDLORD and that in the event of his death prior to commencement of the term hereof, it shall not take effect and shall be null and void.

35. **Termination - Compensation for Work Done:** The OPERATOR agrees, if this lease terminates as set forth herein, to accept reasonable compensation for normal field operations which have been conducted in preparation for the succeeding year's crops. Such field operations shall have been specifically approved in advance by the farm manager. Compensation hereunder shall not exceed the custom rate schedules recommended, established, or published by the State Univeristy or the local County Extension Service.

36. **Possession - Liability:** The LANDLORD shall not be liable in damages for its failure to deliver possession of the premises for any cause beyond its control.

37. **Extension of Term - Amendments:** The parties hereto agree that no act of either party or both parties hereunder shall be construed as an extension of this Lease or any change in its terms unless the same is reduced to writing and signed by both parties.

38. **Oil, Gas and Minerals:** This lease is subject to all oil, gas or mineral leases heretofore or hereafter executed by the owner. The OPERATOR agrees to allowing exploring companies to enter upon the leased premises and make such exploration and drilling as may be proper at any time upon agreement by the exploring companies to pay for all damages to growing crops of the OPERATOR and growing crops and property of the property owner. Upon request, the OPERATOR shall be notified by the LANDLORD of known or anticipated oil, gas or mineral exploration activity.

39. **General:** It is mutually understood and agreed that this lease shall be governed by the laws of the state in which the property is located. It is further recognized by the parties that certain form provisions of this lease may not apply due to the particular type of farming/ranching operation covered. Therefore, this lease shall be understood and interpreted in a manner consistent with the actual farming/ranching operation covered herein.

**Miscellaneous Provisions:**

IN WITNESS WHEREOF, the parties hereto have signed this Farm Lease and Security Agreement on the date first above written.

_James Steffens_  43-1188538
OPERATOR                TAX ID

_____  _____
OPERATOR                TAX ID

Watron Family L.P. by
LANDLORD  Rose M Callahan - G.P.

Page 4 of 4 pages

LAYFAYETTE COUNTY MISSOURI

(160 ACRES) SW1/4  29-51-26
( 50 ACRES) S1/2 NW1/4 29-51-26

(170.3 ACRES) EAST SIDE SW1/4 AND EAST SIDE NW1/4 AND W  1.2 ACRES NE1/4  OF SEC. 32-51-26

( 13.66 ACRES) SW1/4 SEC 4-50-56

(125.28 ACRES) SESE AND W1/2SE AND SOUTH SIDE NESE 5-50-26
(  3.5 ACRES) SW COR. SWNE1/4 5-50-26

(160 ACRES)  NE1/4 SEC. 8-50-26

The West Half of the Northwest Quarter of Section 8, except 3.45 acres out of the Northwest corner by a line commencing 11 chains and 93 links South of the Northwest corner of said West Half of said Northwest Quarter, and running Northeasterly so as to intersect the North line of said West Half of the Northwest Quarter, 5 chains and 81 links East of said Northwest corner of said West Half of the Northwest Quarter; also all that part of the South Half of the West Half of the Southwest Quarter of Section 5 East of a line commencing at a point in the North line of said South Half of the West Half of the Southwest Quarter, 8 chains and 33 links West of the Northeast corner, thence South 14 chains and 20 links, thence West 3 chains and 8 links, thence South 16 degrees West to the South line of the South Half of the West Half of the Southwest Quarter at a point 5 chains and 81 links East of the Southwest corner of said tract; also, the Northeast Quarter of the Southwest Quarter of Section 5, the Southeast Quarter of the Southwest Quarter of Section 5, and the North Half of the Northeast Quarter of the Northwest Quarter of Section 8, all being in Township 50, Range 26, Lafayette County, Missouri.

(196.2 acres)

878.31

RMC
1-23-07

Exhibit "C"

Railroad Drainage problem 2007                January 17th 2008

BH&W Farm production
These fields where affected by Railroad closing off drainage tube.

Field 09-04, 09-05, 09-06, 09-07
Production 2006, harvested 355.79 acres
Production 2007 harvested 98.84 acres loss of 256.9 acres, 72.3%

These fields where not effected by drainage tube
Field 09-01, 09-02, 09-03,
Production 2006, harvested 277.96 acres
Production 2007 harvested 255.51 acres loss of 22.45 acres, 8%

Field's not affected
Planting Date 06/15-22/2007
Yield on field 09-01, 09-02 soybeans 4862.63 bu. 103.7 acres, 46.9 av.
Planting date 60/06-25/2007
Yield on field 09-03, soybean 3821.35 bu. 121 acres 31.6 av.
Yield on field 09-03, corn 3069 bu. 30.6 acres 100.2 av.

Field's affected by Railroad
Planting Date 06/06-25/2007
Yield on field 09-04, corn 5521.6 bu. 40.92 acres 134.8 av.
Yield on field 09-04, 09-05 soybeans 2336.51 bu. 57.9 acres 40.34av. Acres lost 51.18
Yield on field 09-06, 09-07 zero on 200 acres

Soybeans income 40.34x 11.95 per bu = 482.06
Corn income 100.2 x 4.82 per bu = 482.96
Cost of planting corn seed was free because replant guarantee.

|            | Corn    | Soybean |
|------------|---------|---------|
| Seed       | Free    | 35.20   |
| Fertilizer | 32.40   | 0       |
| Planting   | 12.00   | 12.00   |
| Spraying   | 8.37    | 8.37    |
| Harvest    | 30.00   | 30.00   |
| Trucking   | 10.00   | 4.00    |
| Total      | - 92.77 | -89.57  |
| Income     | 482.96  | 482.06  |
| Net Loss per acre | 390.19 | 392.49 |

Times corn acres 51.18 x 390.19 = 19969.92
Times soybeans acres 200 x 392.49 = 78498
Total Loss $98467.92

Railroad Drainage problem 2007					January 17th 2008

Catron FLP Farm production this farm is share cropped from Catron FLP at one third Catron, Two thirds James Steffens
These fields where affected by Railroad closing off drainage tube.

Field 02-12, 02-11
Production 2006, harvested 83.98 acres
Production 2007 harvested 14.45 acres loss of 72.53 acres, 83.3% loss

These fields where not effected by drainage

Field's affected by Railroad
Planting Date 06/06-25/2007
Yield on field 02-11, 02-12 soybeans 335 bu. 10.4 acres 32.21av.

Soybeans income 32.21x 11.95 per bu = 384.90

Cost of planting

|             | Soybean |
|-------------|---------|
| Seed        | 35.20   |
| Fertilizer  | 0       |
| Planting    | 12.00   |
| Spraying    | 8.37    |
| Harvest     | 28.00   |
| Trucking    | 4.00    |
| Total       | - 87.57 |
| Income      | 384.90  |
| Net Loss per acre | 297.33 |

Times soybeans acres 60 x 297.33 =17839.8
Total Loss $17839.8